IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CORY LEDEAL KING, ) <br> ) <br> Defendant. ) <br> _____) | Case No. CR-08-002-E-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it three motions to dismiss filed by defendant King. The motions are fully briefed and at issue. For the reasons expressed below, the Court will deny the motions.

## FACTUAL BACKGROUND

Defendant Cory King is the manager of the Double C Farms Partnership/Lambert Produce farm and cattle feedlot located near Burley, Idaho. He has been charged with four counts of willfully failing to comply with the Safe Drinking Water Act (SDWA), and corresponding Idaho law, by injecting water into wells without a permit, and one count of making a false statement to an

**Memorandum Decision and Order – Page 1**

investigator. The factual background leading to these charges was fully set forth in a separate decision on King's motion to suppress, and will not be repeated here.

## STATUTORY FRAMEWORK

**1.     Safe Drinking Water Act**

The SDWA establishes a federally mandated, state-administered regulatory scheme for the protection of natural sources of drinking water. To protect underground sources of drinking water, the SDWA set up a system where (1) the EPA sets the minimum standards, (2) states develop their own programs incorporating those standards and apply for EPA approval, (3) once approved, states become the "primary" enforcers through the policing of their own programs, and (4) in the approved states, the EPA becomes a secondary enforcer. *See* 42 U.S.C.§§ 300h to h-7. The state programs are known as "Underground Injection Control" (UIC) programs.

While directing the EPA to set minimum standards for UIC programs, Congress mandated some of its own in the SDWA. Specifically with regard to protecting underground drinking water, Congress directed that state programs must prohibit any "underground injection" that is not authorized by a permit issued by the state. *Id*. at § 300h(b). Congress defined "underground injection" as "the subsurface emplacement of fluids by well injection." *Id*. at § 300h(d)(1). A state

**Memorandum Decision and Order – Page 2**

may issue a permit for such an underground injection only if the applicant satisfies the state "that the underground injection will not endanger drinking water sources." *Id*. at 300h(b)(1)(B).  The applicant must show that his injection will not introduce any contaminant into underground water that "supplies or can reasonably be expected to supply any public water system . . . ."  *Id*. at § 300(d)(2).

The EPA's regulations flesh out the SDWA's dictates.  Under the EPA's regulations, all "underground injections" without a permit are prohibited, unless the injection occurs in a well authorized by state rule.  *See* 40 C.F.R. § 144.11. The applicant has the burden of showing that his injection in not conducted "in a manner that allows the movement of fluid containing any contaminant into underground sources of drinking water."  *Id*. at § 144.12.  The regulations define "underground sources of drinking water" as an "aquifer . . . [that] (a)(1) supplies any public water system; or (2) contains a sufficient quantity of ground water to supply a public water system and (i) currently supplies drinking water for human consumption; or (ii) contains fewer than 10,000 mg/l total dissolved solids, and (b) which is not an exempted aquifer."

The SDWA and the EPA's regulations establish (1) a prohibited act and (2) an affirmative defense.  The prohibited act is the underground injection of a fluid without a permit.  This act is prohibited regardless of whether the fluid is a

**Memorandum Decision and Order – Page 3**

contaminant and regardless of whether the injection endangers an underground source of drinking water. The affirmative defense is that this injection is not conducted in a manner that moves contaminated fluids into an underground source of drinking water.

These are the minimum standards for state UIC programs. *Id*. at § 300h. The SDWA contemplates that states will be the "primary" enforcers. A state may secure primary enforcement authority for the regulation of underground water sources if the EPA approves the state's UIC program. *Id*. at § 300h-1(b)(3).

## 2.   Idaho's UIC Plan

Idaho has an EPA-approved UIC plan. *See* 40 C.F.R. §§ 147.650-53. The portion of that plan that King is accused of violating is Idaho Code § 42-3903. That statute prohibits the use of any "waste disposal and injection well" without a permit. The term "waste disposal and injection well" is defined as an "injection well" more than 18 feet deep. *See* I.C. § 42-3902(19). The term "injection well" is defined to include wells that are "drilled or dug" and are "intended to be used for injection." *See* I.C. § 42-3902(8). The term "injection" means the "subsurface emplacement of fluids."

Thus, similar to the SDWA, the prohibited act under Idaho law is to inject a fluid down a well, more than 18 feet deep, without a permit. There is no

**Memorandum Decision and Order – Page 4**

requirement that the State show that a contaminate was injected or that the injection will endanger a source of drinking water.

Rather, these issues are for the applicant to prove to be entitled to a permit. Under the administrative rules promulgated by the Idaho Department of Water Resources (IDWR), the IDWR's Director must take into account many factors in ruling on permit applications, including whether "drinking water sources" will be "unreasonably affected." *See IDWR Rule 45.02*. The term "drinking water sources" is defined to be "[a]n aquifer which contains water having less than ten thousand (10,000) mg/l total dissolved solids and has not been exempted . . . ." *Id*. at 10.17.

**3.    SDWA Criminal Provisions**

Under the SDWA, any person who willfully violates any requirement of an "applicable underground injection control program" may be "imprisoned for not more than 3 years, or fined in accordance with Title 18, or both." *Id*. at § 300h-2(b)(2). The term "applicable underground injection control program" is defined to include "the program . . . which has been adopted by the State and which has been approved under subsection (b) of this section." *Id*. at § 300h-1(d). Under Idaho law, the operation of a waste disposal and injection well without a permit is a misdemeanor. *See* I.C. § 42-3911.

**Memorandum Decision and Order – Page 5**

## 4. Interplay Between SDWA and Idaho Law

The SDWA sets up a parallel enforcement scheme, with the states as "primary" enforcers and the EPA as a secondary enforcer, for all states with approved UIC plans. Even after EPA approves a state UIC plan, the provisions of the SDWA and the EPA's regulations remain in effect. Congress, in the SDWA, directed the EPA to not pass any regulation that would make it "infeasible to comply with both such regulation and the State [UIC] program." *See* 42 U.S.C. § 300h(b)(3)(B)(ii). The EPA's regulations carry this congressional intent forward by proclaiming that "[a]ny state program approved by the [EPA] shall at all times be conducted in accordance with the requirements of this part." *See* 40 C.F.R. § 145.1(f).

However, state requirements "with a greater scope of coverage than that required" by the SDWA and EPA regulations "are not part of the federally approved program." *Id*. at § 145.1(g)(2). Nevertheless, a state requirement that is "more stringent" than federal requirements is part of the federal program. *Id*. at § 145.1(g)(1).

## 5. King's Indictment

King was indicted for four counts of willfully injecting water into a "waste disposal and injection well" in violation of Idaho Code §§ 42-3903, -3911, and 42

**Memorandum Decision and Order – Page 6**

U.S.C. § 300h-2. The Court will at times in this decision refer to these four counts as the "injection" counts. Each of the four counts alleges that King acted willfully, a charge that exposes him to the penalty of three years imprisonment set forth in § 300h-2(b)(2). He was also charged in a fifth count with making a false statement to an investigator in violation of 18 U.S.C. § 1001(a)(2).

## ANALYSIS

King's multiple challenges to this Court's subject matter jurisdiction mostly begin with an assertion that the four "injection" counts require the Government to prove more than it has alleged in the indictment. Specifically, King argues that the Government must prove that (1) the fluid or liquid injected contained a contaminate, and (2) the injection endangered a source of drinking water.

The Court disagrees. As set forth above, these two elements are part of King's affirmative defense, not part of the Government's case-in-chief. The Court will not repeat that analysis here, as it is fully detailed above.

The Court can find no constitutional infirmity in this statutory framework. In criminal cases, the prosecution has the burden of proving every element of the crime beyond a reasonable doubt. *In re Winship* 397 U.S. 358, 364 (1970). It is constitutionally permissible to place on the defendant the burden of proving affirmative defenses by a preponderance of the evidence, as long as the defendant

**Memorandum Decision and Order – Page 7**

is not required to negate an element of the offense. *Dixon v. United States,* 126 S. Ct. 2437 (2006) (interpreting federal statutes as requiring defendant to prove duress by a preponderance of the evidence); *Martin v. Ohio,* 480 U.S. 228 (1987) (holding that Ohio law may permissibly require defendants charged with murder to prove self-defense by a preponderance of the evidence).; *United States v. Dominguez-Mestas*, 929 F.2d 1379, 1384 (9th Cir.1991) (in a conviction for knowingly importing illegal merchandise, it was proper to place the burden of proving duress by a preponderance of evidence on defendant when duress did not involve any elements of the offense).

In this case, the prohibited act is the injection of liquid into a waste water and injection well without a permit. The affirmative defense that King must prove does not negate any element of the prohibited act – King must show that the liquid he injected will not endanger a source of drinking water, and the prohibited act requires no showing of a danger to a source of drinking water. Thus, the SDWA and the Idaho law are not constitutionally infirm.

While King argues that the Government should have been required to negate his affirmative defense in front of the Grand Jury, there is no such requirement. *United States v. Williams*, 504 U.S. 36 (1992) (holding that district court may not dismiss otherwise valid indictment on the ground that the Government failed to

**Memorandum Decision and Order – Page 8**

disclose to Grand Jury substantial exculpatory evidence in its possession).[1]

King argues next that Idaho's definition of a drinking water source is broader in scope than the definition under the SDWA, and hence the Government cannot rely on Idaho's definition in pursuing this prosecution. It is true, as discussed above, that state protections greater in scope than the SDWA lie outside the federal program and cannot be prosecuted federally. *See* 40 C.F.R. § 145.1(g)(2). Yet here, the definition of drinking water source becomes relevant only with regard to King's affirmative defense – he must show that his injection is not endangering a drinking water source. It is not relevant to the elements of the Government's case, as discussed above, and so § 145.1(g)(2) is not applicable.

Even if the regulation is somehow applicable, King's argument fails for three reasons. First, the Government states in its briefing that it will rely on the SDWA definition rather than on the state definition, so the point is moot. *See Government Response Brief* at pp. 4-5; *see generally, United States v. Elias*, 269 F.3d 1003 (9th Cir. 2001) (holding that Government retains authority to pursue RCRA violation even though it had approved state program in lieu of RCRA).

---

[1] While not bound to present exculpatory evidence, prosecutors were directed to do so by the Department of Justice. *United States v. Furrow*, 125 F. Supp. 2d 1170, 1176 (C.D. Cal. 2000) (noting Department of Justice direction to its prosecutors who are "personally aware of substantial evidence that directly negates guilt . . . [to] present or otherwise disclose such evidnece to the grand jury before seeking an indictment"). This issue was not covered in the briefing so the Court is not aware of the current policy in the Justice Department.

**Memorandum Decision and Order – Page 9**

Second, it is not clear – as King argues – that Idaho protects a greater scope of aquifers than the SDWA. And third, even if Idaho does protect a greater scope of aquifers, it is not clear at this stage of the litigation that King is being prosecuted for injecting water into such an aquifer that enjoys protection under Idaho law but not under the SDWA. The Court will analyze each of these last two points in more detail.

First, it is not clear that Idaho protects a broader scope of aquifers. The protected aquifers are defined by the terms "drinking water source" (Idaho's term) and "Underground Source of Drinking Water" (SDWA's term). Idaho protects smaller aquifers not protected by the SDWA – the Idaho law contains no quantity/use restriction on its protection, while the SDWA only protects aquifers that either supply a public water system or contain a sufficient quantity of water to do so.

But the SDWA protects, for lack of a better word, "murky" aquifers that go unprotected under the Idaho definition. The SDWA protects aquifers with more than 10,000 mg/l total dissolved solids ("murky" aquifers) if the aquifer meets the SDWA's quantity requirements, while the Idaho definition would not apply to "murky" aquifers no matter what quantity of water they contain. Thus, it is unclear whether the Idaho law is greater in scope than the SDWA and hence outside of the

**Memorandum Decision and Order – Page 10**

federal program.

However, even if the Idaho law was greater in scope than the SDWA because it protected smaller aquifers, it is not clear at this stage of the litigation that King is being prosecuted for injecting into one of those smaller aquifers. The record contains no evidence on the size of the aquifers under the Double C facility.

King responds that this lack of evidence actually cuts against the Government's case because the record contains no evidence suggesting that the aquifers meet the quantity/use requirements of the SDWA. However, as discussed above, the quantity/use requirements – that is, whether the aquifer is a "Underground Source of Drinking Water" – is not an element of the crime but is rather an element of King's affirmative defense. Thus, the Government's failure to adduce proof on this issue is not fatal to the indictment.

Moreover, King's argument essentially seeks summary judgment in a criminal case, which is improper. *See United States v. Blanton*, 476 F.3d 767, 771 (9th Cir. 2007). King "may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *United States v. Jensen,* 93 F.3d 667, 669 (9th Cir.1996). The indictment in this case is sufficient on its face, and hence the King's challenge based on the lack of

**Memorandum Decision and Order – Page 11**

evidence at this stage in the litigation must be rejected.[2]

King argues next that the Government is barred from bringing this suit for failing to comply with 42 U.S.C. § 300h-2. This statute, King argues, requires the EPA to notify the state at least thirty days before bringing any criminal action, and prohibits suit unless the state is failing to enforce its won programs. Because the Government failed to comply with any of these requirements, King asserts, this Court lacks subject matter jurisdiction over this action.

The Court disagrees. This statute sets up a procedure for the EPA to bring civil suits, but does not constrain the Attorney General from pursuing criminal actions.

In subparagraph (a)(1), the statute states that whenever the EPA finds that during a period when a state has primary enforcement responsibility that a person is violating that state's program for underground water sources, the EPA "shall so notify the state and the person violating the requirement." If the state does nothing for 30 days, the EPA has the authority to "commence *a civil suit* under subsection (b) of this section." (emphasis added).

---

[2] King also raised an issue regarding the regulation of Class V wells. He raised that issue for the first time in a reply brief, giving the Government no opportunity to respond. The Court will therefore deny the motion at this time, without prejudice to King's right to properly raise the issue by motion at a later time.

**Memorandum Decision and Order – Page 12**

This section quite clearly only applies to civil actions. Nowhere does the statute purport to apply the pre-suit conditions of notice and state-inaction to restrict the ability of the Attorney General to bring a criminal action.

In *United States v. Morgan*, 222 U.S. 274, 282 (1911), the Supreme Court held that the Attorney General's authority to enforce the criminal laws is not diminished without "a clear and unambiguous expression of the legislative will." There is no "clear and unambiguous" expression intent to apply these pre-suit conditions to anything other than the EPA's civil enforcement authority.

King responds that it is absurd to assume that the EPA is precluded "from prosecuting enforcement while at the same time allowing the Attorney General to ignore that preclusion." *See King Reply Brief* at p. 4. However, that is precisely the assumption that is made under *Morgan* absent some clear and unambiguous declaration by Congress that the Attorney General is under the same restrictions as the agency. Moreover, the Circuit has read similar provisions in another section of the SDWA to "say[] nothing to limit the district court's jurisdiction over such an action if the Government was not acting pursuant to an authorized request from the state." *United States v. Alisal Water Corp.*, 431 F.3d 643, 651 (9th Cir. 2005) (a civil enforcement action).

King argues next that the Attorney General has no authority to prosecute

**Memorandum Decision and Order – Page 13**

conduct that was the subject of a past state action that has been resolved. To the extent that King is raising an argument under the Double Jeopardy Clause, this argument is unavailable. That constitutional provision does not prohibit defendants from being prosecuted by separate sovereigns, pursuant to different statutory provisions, for the same conduct – for example, a federal action may impose criminal sanctions following a state assessment of civil fines that may be punitive in nature. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) (holding Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for [the] same offense").

King recognizes this authority in his reply brief, and argues that he is not relying on the Double Jeopardy Clause: "Having clearly expressed its preference for State enforcement by states with *primary* enforcement authority, Congress clearly intended *to preclude* dual enforcement by a helpful, dissatisfied or intrusive federal agency." *King Reply Brief* at p. 15 (emphasis added). This argument would be convincing if the word *primary* was replaced with the word *exclusive*. An *exclusive* enforcer has the right to *preclude* others from undertaking enforcement actions. But a *primary* enforcer has no such right, because the word itself implies the existence of a *secondary* enforcer. Congress could have given states the right to be exclusive enforcers once approved, but did not do so. The

**Memorandum Decision and Order – Page 14**

Court cannot rewrite the SDWA to accomplish that end.

King's argument was rejected in a similar context in the *Elias* case, cited earlier. In that case, the Circuit held that the Government shared enforcement authority with Idaho. *See Elias*, 269 F.3d at 1010-11.

King argues next that the SDWA only authorizes the Government to prosecute current ongoing violations, and cites in support provisions of the Act using present tense language. Yet the criminal provision of the SDWA is prefaced by the phrase, "any person who violates," which includes both past and present violations. King cites no case holding that identical language is limited to current ongoing violations. The Court therefore declines to adopt this argument.

King has raised other arguments, but the rulings above dispose of all of them. Accordingly, the Court will deny King's motions to dismiss.

**Memorandum Decision and Order – Page 15**

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions to dismiss (Docket Nos. 16, 17 and 36) are DENIED.



DATED: **August 29, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 16**