IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-08-002-E-BLW |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| v. | ) | |
| | ) | |
| CORY LEDEAL KING, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it motions to reconsider filed by both parties. The Court held oral argument on November 6, 2008, and took the motions under advisement. For the reasons expressed below, the Court will grant the Government's motion and deny defendant King's motion.

## SUMMARY

In its past decision, the Court rejected King's arguments that the Government must prove that (1) the injected fluid contained a contaminant, and (2) the injection endangered a source of drinking water. The Court reaffirms those holdings. The Court went on to hold that King could establish an affirmative

**Memorandum Decision and Order – Page 1**

defense if he could prove a lack of contaminant or a lack of endangerment. After reconsideration, the Court finds that this holding was in error.

## ANALYSIS

### 1.     The Statutory Scheme

King was indicted for four counts of willfully injecting water into a "waste disposal and injection well" in violation of Idaho Code §§ 42-3903, -3911, and 42 U.S.C. § 300h-2. Section 300h-2 is part of the Safe Drinking Water Act (SDWA). *See* 42 U.S.C.§§ 300h to h-7.

The SDWA set minimum standards for protecting underground drinking water, and directed the EPA to set minimum standards for state "Underground Injection Control" (UIC) programs. Specifically with regard to protecting underground drinking water, Congress directed that state programs – to obtain EPA approval – must prohibit any "underground injection" that is not authorized by a permit issued by the state. *Id*. at § 300h(b). Congress defined "underground injection" as "the subsurface emplacement of fluids by well injection." *Id*. at § 300h(d)(1). A state may issue a permit for such an underground injection only if the applicant satisfies the state "that the underground injection will not endanger drinking water sources." *Id*. at 300h(b)(1)(B). The applicant must show that his injection will not introduce any contaminant into underground water that "supplies

**Memorandum Decision and Order – Page 2**

or can reasonably be expected to supply any public water system . . . ." *Id*. at § 300(d)(2).

The EPA's regulations flesh out the SDWA's dictates. Under the EPA's regulations, all "underground injections" without a permit are prohibited, unless the injection occurs in a well authorized by state rule. *See* 40 C.F.R. § 144.11. These regulations – consistent with the SDWA – put the burden on the permit applicant to show that his injection will not be conducted "in a manner that allows the movement of fluid containing any contaminant into underground sources of drinking water." *Id*. at § 144.12.

These are among the minimum standards for state UIC programs. *Id*. at § 300h. The SDWA contemplates that states will be the "primary" enforcers. A state may secure primary enforcement authority for the regulation of underground water sources if the EPA approves the state's UIC program. *Id*. at § 300h-1(b)(3).

Idaho has an EPA-approved UIC plan. *See* 40 C.F.R. §§ 147.650-53. The portion of that plan that King is accused of violating is Idaho Code § 42-3903. That statute prohibits the use of any "waste disposal and injection well" without a permit. The term "waste disposal and injection well" is defined as an "injection well" more than 18 feet deep. *See* I.C. § 42-3902(19). The term "injection well" is defined to include wells that are "drilled or dug" and are "intended to be used for

**Memorandum Decision and Order – Page 3**

injection." *See* I.C. § 42-3902(8). The term "injection" means the "subsurface emplacement of fluids."

Thus, similar to the SDWA, the prohibited act under Idaho law is to inject a fluid down a well, more than 18 feet deep, without a permit. There is no requirement that the State show that a contaminant was injected or that the injection will endanger an underground source of drinking water.

Rather, these issues are for the applicant to prove to be entitled to a permit. Under the administrative rules promulgated by the Idaho Department of Water Resources (IDWR), the IDWR's Director must take into account many factors in ruling on permit applications, including whether "drinking water sources" will be "unreasonably affected." *See IDWR Rule 45.02*. The term "drinking water sources" is defined to be "[a]n aquifer which contains water having less than ten thousand (10,000) mg/l total dissolved solids and has not been exempted . . . ." *Id*. at 10.17.

**2.     Defining the Crime**

The statutes and regulations cited above define the crime as the underground injection of a fluid without a permit. More specifically, the Government must prove that (1) a person (2) willfully violated (3) a requirement of Idaho's UIC program, *see* 42 U.S.C. §§ 300h-2(b)(2), which prohibits the injection of a fluid

**Memorandum Decision and Order – Page 4**

down a well, more than 18 feet deep, without a permit. *See* Idaho Code § 42-3903. That act is a crime regardless of whether the fluid is a contaminant and regardless of whether the injection actually endangers or contaminates an underground source of drinking water.

In its prior decision, the Court held that King had an affirmative defense if he could prove that the fluid was not a contaminant or did not threaten an underground source of drinking water. Upon reconsideration, the Court finds that decision to be in error. The crime is complete upon a showing of an underground injection of a fluid without a permit. The statutes and regulations say nothing about establishing an affirmative defense as earlier identified by the Court.

Indeed, such an affirmative defense would be antithetical to the Congressional policy behind the SDWA. That policy is prophylactic in nature; rather than assessing damage after an injection, the SDWA seeks to prevent the damage in the first place. This is analogous to erecting a fence at the cliff's edge rather than merely parking an ambulance at the bottom. The SDWA was designed as a "fence", *i.e*, designed to prevent contamination by requiring all underground injections to be vetted in the permit process before the injections take place.

If a person could escape responsibility for his injection by proving that it did not threaten drinking water sources, the SDWA's prophylactic approach would be

**Memorandum Decision and Order – Page 5**

defeated.  Congress recognized the human frailty that makes it "easier" to seek forgiveness than permission, and countered that tendency by requiring permission to precede injection.

King argues that the statutory definition of "underground source of drinking water" (USDW) is unconstitutionally vague.  But as explained above, the existence, or absence of, a USDW is not relevant to either the Government's case-in-chief or King's defense.

For all of these reasons, the Court will deny King's motion to reconsider and grant the Government's motion to reconsider.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Government's motion to reconsider (Docket No. 64) is GRANTED and the Court hereby STRIKES its prior holding that the defendant is entitled to an affirmative defense by proving that the injected fluid did not contain a contaminant or that the injection did not actually contaminate or threaten an underground source of drinking water.

**Memorandum Decision and Order – Page 6**

IT IS FURTHER ORDERED, that the defendant's motion to reconsider (Docket No. 68) is DENIED.



DATED:  **November 26, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – Page 7**