IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. CR-08-002-E-BLW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| CORY LEDEAL KING, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

        The Court has before it the government's motion in limine (Docket No. 65),

motion to compel reciprocal discovery (Docket No. 89), and motion in limine for

protective order or to preclude testimony obtained purportedly for use in a civil

proceeding (Docket No. 102).  The Court also has before it Cory Ledeal King's

motion in limine (Docket No. 93), motion to strike surplusage (Docket No. 92),

and motion to compel Federal Rule of Evidence Rule 404(b) disclosures (Docket

No. 91).  The Court additionally has before it King's motion to vacate or continue

trial date or, in the alternative, to exclude government expert witnesses (Docket

No. 103), and his oral motion to dismiss two counts in the indictment for

insufficient evidence, which he raised at the hearing on April 16, 2009.

        For the reasons set forth below, the Court will grant the government's

motion in limine (Docket No. 65), deny without prejudice the government's

motion to compel reciprocal discovery (Docket No. 89), deny without prejudice the government's motion for protective order or to preclude testimony purportedly obtained for a civil proceeding (Docket No. 102). The Court will grant in part King's motion in limine (Docket No. 93), deny King's motion to strike surplusage (Docket No. 92), and deny without prejudice King's motion to compel disclosures (Docket No. 91). The Court will also deny King's motion to continue or exclude government expert witnesses (Docket No. 103), and deny King's oral motion to dismiss two counts in the indictment for insufficient evidence, which he raised at the pretrial conference on April 16, 2009.

## A.   The Motions in Limine

The government moves to exclude evidence or argument on (1) a lack of environmental harm, (2) selective prosecution, and (3) evidence designed to achieve jury nullification. King did not file an opposition to the government's motion. However, King filed his own motion to exclude evidence or argument of (1) the character of the fluids alleged to have been injected into irrigation wells, (2) King's silence in response to questioning, (3) Idaho State Department of Agriculture (ISDA) employee John Klimes's observations of two pressure gauges on King's farm, and (4) descriptions of prior proceedings where sworn testimony was given. The government filed an opposition to King's motion.

### a.   Evidence of environmental harm and character of fluids

### 1.    The government's motion

The government moves to exclude as irrelevant and prejudicial all evidence presented by King tending to indicate a lack of environmental harm caused by his actions.  As the Court has already ruled, affirmative defenses that the injected fluid was not a contaminant or that it did not threaten an underground source of drinking water are unavailable to King under the Safe Drinking Water Act.  *See* Docket No. 77 at p. 5.  A lack of environmental harm is not, therefore, a defense available to King, and the Court will exclude evidence of a lack of environmental harm as irrelevant, and likely to cause undue delay and unfair prejudice to the government. *See* Fed. R. Evid. 401, 402, 403.

### 2.    King's motion

King moves to exclude as irrelevant and prejudicial any reference to process wastewater, manure or waste material.  King argues that, after the government succeeded in arguing the harmless nature of the fluids cannot be an affirmative defense, the Court should not allow the government to present evidence of the harmful nature of the fluids.  On the other hand, the government argues that the character of the fluids is "inextricably intertwined" with evidence of King's former employee's reporting of the unauthorized injections, evidence of the injections themselves, and evidence of discussions between King and state authorities.

**Memorandum Decision and Order – page 3**

Evidence "inextricably intertwined" with the conduct underlying the offense may be admissible even if not directly relevant to the elements of the crime.  *See United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992); *see also United States v. Schales*, 546 F.3d 965, 975-76 (9th Cir. 2008); *United States v. Collins*, 90 F.3d 1420, 1428-29 (9th Cir. 1996).  For example, in *Daly*, evidence regarding a shoot-out was "inextricably intertwined" with the charge that the defendant was a felon in possession of a firearm.  974 F.2d at 1217.  The Circuit held that "evidence regarding the shoot-out was necessary to put [the defendant's] illegal conduct into context and to rebut his claims of self defense."  *Id.*  The jury "cannot be expected to make its decision in a void-without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."  *Id.* (internal quotation omitted).

Testimony at the suppression hearing, cited by the government in support of its motion in limine, does not support the government's argument that excluding references to wastewater would provide the jury with an incoherent picture of the events relevant to the alleged crime.  The testimony states that an anonymous employee tipped Klimes to wastewater injection violations, Klimes "followed the path of the wastewater" to locate the injections, and King denied illegal wastewater injections.  *See Suppression Hearing Transcript*, Docket No. 55 at pp. 32, 95-96,

**Memorandum Decision and Order – page 4**

98, 129-131.  Requiring witnesses to refer merely to "fluids" or "water" or "injections" would not confuse the jury or require it to make its decision in a void. The Court finds that references to wastewater are not necessary to present a coherent picture of the events to the jury, and are therefore not relevant to proof of occurrence of unlawful injections.

Even if the references to wastewater may have some limited relevance, the Court will exclude them under Federal Rule of Evidence 403 for their likelihood to unduly delay the trial or unfairly prejudice King.  The nature of the fluids injected is irrelevant under the provisions of the Safe Drinking Water Act and Idaho Code at issue, and any relevance for the purpose of presenting a coherent picture is marginal, at best.  That marginal relevance would be substantially outweighed by delay of the trial.  Allowing government testimony on the nature of the fluids would open the door to King's evidence that he injected only unadulterated water. Both sides may then wish to present expert testimony on this matter, including water quality tests.  This would cause a substantial delay on an irrelevant issue. Furthermore, allowing the government to put on references to wastewater without allowing King to provide rebuttal evidence thereto would unfairly prejudice King by allowing the government to submit unopposed proof of a highly prejudicial and irrelevant fact – that the fluid injected was wastewater from a cattle feedlot.

**Memorandum Decision and Order – page 5**

In sum, the government cannot have it both ways.  It succeeded in its argument that the nature of the fluids is irrelevant to the commission of the crime. It cannot now be permitted to provide the jury with references to the harmful nature of the fluids without causing undue delay of the trial or unfair prejudice to King.  To the extent that the government may wish to present admissions by King wherein he used words characterizing the allegedly injected fluids, the proper presentation to the jury of such admissions is an issue the Court will address at trial.[1]

### b.    Selective prosecution

The government moves to exclude as irrelevant and prejudicial any reference to selective prosecution of King.  A "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).  Evidence of selective prosecution can establish grounds for dismissal prior to trial, but such evidence would be irrelevant and unfairly prejudicial to present to the jury.  *See* Fed. R.

---

[1]    The Court rejects only the government's argument that references to wastewater are admissible on the ground that they are "inextricably intertwined" with the conduct underlying King's offense, and does not preclude the admissibility of references to wastewater for some other purpose.

**Memorandum Decision and Order – page 6**

Crim. P. 12(b); *see also United States v. Oaks*, 508 F.2d 1403, 1404 (9th Cir. 1974). The Court will therefore exclude any evidence or argument as to selective prosecution at trial.

     **c.    Jury nullification**

     The government next moves to exclude as irrelevant and prejudicial evidence or argument designed to achieve jury nullification.  The government speculates that King may argue he acted in good faith because he observed other individuals in his community operate injection wells without permits, or because state officials did not prosecute those other violations.  According to the government, such arguments would be improperly designed to achieve jury nullification on an irrelevant basis.

     King has "no constitutional right to present evidence merely 'to bring out the reason for [his] actions.'"  *Zal v. Steppe*, 968 F.2d 924, 929 (9th Cir. 1992). Additionally, the Circuit has never recognized a right held by defendants to seek nullification of a guilty verdict.  *See Zal*, 968 F.2d at 930 (Trott, J., concurring); *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1991); *United States v. Simpson*, 460 F.2d 515, 518-19 (9th Cir. 1972).

     At this point, however, the precise nature of evidence of widespread injection violations in the area or a lack of enforcement is unclear, and a ruling

**Memorandum Decision and Order – page 7**

would be premature.  The Court will exclude any irrelevant evidence or argument designed to achieve jury nullification, as it may arise at trial.

### d.    References to King's silence

King moves to exclude references to questions asked of King which he declined to answer.  However, because the precise nature of evidence regarding King's silence is unclear and the government states that it will proffer such evidence outside of the jury's presence, the Court will defer ruling on specific instances of silence until trial.

### e.    Klimes's observations of pressure gauges

King next seeks to exclude Klimes's testimony that he observed a reading of 65 pounds per square inch (p.s.i.) at pressure gauges on an irrigation line leaving irrigation pond #2 and on the irrigation line at irrigation well #1.[2]  King argues that the observations are irrelevant and prejudicial without foundational evidence as to the elevation of each gauge and "expert explanation."  The government concedes that speculation from Klimes as to whether fluids from pond #2 could be sent elsewhere on the farm may involve facts not in evidence.  The government

---

[2]    It is not clear on which date Klimes allegedly observed these identical readings at issue.  *See King's Motion in Limine*, Docket No. 93 at p. 2 (referring to May 3, 2005); *Government's Response*, Docket No. 96 at p. 5 (May 23, 2005); *King's Reply*, Docket No. 100 at p. 14 (May 31, 2005).

**Memorandum Decision and Order – page 8**

maintains, however, that Klimes may testify as to what he observed to prove that King injected fluid from pond #2 into well #1.

A witness may testify to a relevant matter if sufficient evidence is introduced to support a finding that the witness has personal knowledge.  Fed. R. Evid. 602. Pursuant to Rule 701, however, a non-expert witness's testimony in the form of opinions or inferences is limited, and "[t]he mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."  *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir.1997); *see also Jerden v. Amstutz*, 430 F.3d 1231, 1239-40 (9th Cir. 2005), *as amended*.

Here, the irrigation system at the farm was complex, involving many wells and irrigation pipes, and the two pressure gauges at issue were far enough apart that Klimes had to drive from one to the other.  Thus, it would appear that specialized knowledge is necessary to establish that the pipes were even connected, let alone that identical p.s.i. readings mean the two locations carried the same fluids.  Further, Klimes's position as an ISDA investigator of cattle feedlot operations could lead the jury to believe that he is trained in detecting the source of waste fluids in pipes.  Therefore, the government may not use Rule 701 to submit to the jury Klimes's lay opinion from the identical pressure readings that King was pumping fluids from pond #2 to well #1.  *See Figueroa-Lopez*, 125 F.3d at 1245-

**Memorandum Decision and Order – page 9**

46.  The government does not argue that it will qualify Klimes or anyone else to provide expert testimony on the p.s.i. readings.

Without expert explanation, it would appear that Klimes's testimony as to his direct observations of the p.s.i. readings on these two gauges may be irrelevant and unfairly prejudicial to King.  In light of the complexity of the irrigation system and the apparent distance between the two gauges, it would seem that expert testimony is necessary to render observations of the identical p.s.i. readings probative as to whether King was pumping fluid from pond #2 to well #1.  Additionally, if such observations, standing alone, have any relevance, it is substantially outweighed by the danger of unfair prejudice to King.  *See* Fed. R. Evid. 403.  The logical inference from the equal p.s.i. readings is not a matter of common understanding in these circumstances.  Allowing the jury to speculate as to the meaning of Klimes's observations could unfairly prejudice King.  The Court will therefore exclude Klimes's testimony that the readings at pond #2 and well #1 were each 65 p.s.i.[3]  The Court may reconsider its ruling, however, upon a showing that the circumstances at the pond and well support such an inference that they are

---

[3]      At the hearing on April 16, 2009, the government expressed concern regarding the scope of this ruling, but this ruling is limited to excluding unqualified testimony on the readings being 65 p.s.i. at the two locations.  It does not restrict otherwise admissible testimony on any of Klimes's other observations that day.

**Memorandum Decision and Order – page 10**

connected because of identical p.s.i. readings.   At this point in time, however, such a showing has not been made.

### f.      References to prior sworn testimony

King moves to compel witnesses to refer to prior sworn testimony as to having occurred at a "prior proceeding," to avoid allowing the jury to speculate regarding grand jury proceedings.  Similarly, the government requests that, if the Court grants King's request, that there be no reference to the proceeding to avoid allowing the jury to conclude that a prior trial resulted in a hung jury.  The Court will grant both parties' requests.  When using prior sworn testimony, the parties are instructed not to refer to, or elicit descriptions of,  the prior proceeding where the witness provided such testimony.

## B.     King's motion to continue or exclude expert testimony

King's motion to vacate or continue the trial date or, in the alternative, to exclude government expert witnesses (Docket No. 103) challenges the adequacy and timing of the government's disclosure of potential experts as well as the relevance of expert testimony to the charges.  At the hearing on April 16, 2009, the government represented that, because the Court has ruled that environmental harm is irrelevant, the government will only present a single expert in its case-in-chief, Dr. Thomas Bartolino.  He will testify as to the depth of two of the irrigation wells

**Memorandum Decision and Order – page 11**

to establish their depth exceeds eighteen feet.  That depth triggers the permit

requirement for an injection and, according to the government, evidence on it is

missing from other evidence of "well logs" for the two wells to which Dr.

Bartolino would testify.

    The government did not disclose Dr. Bartolino in writing until April 14,

2009, which was part of King's grounds for seeking a continuance or exclusion.

*See King's Motion to Continue or Exclude Experts* at Exhibit B.  At the hearing on

April 16, 2009, however, counsel for King represented he does not need a

continuance to rebut Dr. Bartolino's testimony so long as Dr. Bartolino is the only

government expert.  Without ruling on Dr. Bartolino's qualifications to provide

such testimony, the Court will therefore deny the motion to continue or exclude

expert testimony.

**C.    King's Motion to Strike Surplusage**

    King moves to strike references to "process wastewater" from the

superseding indictment pursuant to Federal Rule of Criminal Procedure 7(d).  *See*

*Superseding Indictment*, Docket No. 7 at ¶¶ 4, 5, 15.  The government opposes this

motion.

    "As long as the crime and the elements of the offense that sustain the

conviction are fully and clearly set out in the indictment, the right to a grand jury is

**Memorandum Decision and Order – page 12**

not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." *United States v. Miller*, 471 U.S. 130, 136 (1985).  The court may, however, strike surplusage from the indictment.  Fed. R. Crim. P. 7(d).  "The purpose of a motion to strike under [Rule] 7(d) is to protect a defendant against 'prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (quoting *United States v. Ramirez*, 710 F.2d 535, 544-45 (9th Cir.1983)).

As discussed above, providing the jury with references to King's alleged injection of process wastewater may prejudice King.  However, this Court does not customarily provide the jury with the indictment and will not do so in this case. The Court will therefore deny King's motion to strike surplusage.

**D.    The Government's Motion to Compel Reciprocal Discovery**

The government filed a motion to compel reciprocal discovery (Docket No. 89), but counsel for King agreed at the hearing on April 16, 2009, to provide discovery to the government.  Assuming King will provide discovery in a timely fashion, the government's motion is denied without prejudice.

**E.    The Government's Motion for Protective Order or to Preclude Testimony Obtained Purportedly for Use in a Civil Proceeding**

The motion for protective order or to preclude testimony (Docket No. 102)

**Memorandum Decision and Order – page 13**

pertains to King's use of deposition testimony of a government witness, Shaun

Carson, taken on April 15, 2009, in a parallel state civil proceeding initiated

against King's farm by the State of Idaho.  Carson was subpoenaed on April 3,

2009.  Carson moved to quash the subpoena in state court, but, on April 14, 2009,

the state court denied Carson's motion, ruling that the "relevant forum directly on

whether the deposition can be taken is the federal court."  *See* Docket No. 102 at p.

3.  Later that same day, the government sought a protective order from this Court

(Docket No. 102), but the Court was unable to rule prior to Carson's deposition,

which apparently occurred the morning of April 15, 2009.  The government now

seeks alternative relief barring King from using Caron's deposition testimony.

     The government is correct that Federal Rule of Criminal Procedure 15(a)

does not entitle a defendant to depose the government's witnesses who will testify

at trial.  *See United States v. Rich*, 580 F.2d 929, 933-34 (9th Cir. 1978); *In re*

*United States*, 348 F.2d 624, 626 (1st Cir. 1965); *see also United States v. Bonilla*,

615 F.2d 1262, 1264 (9th Cir. 1980) (holding that the government had no obligation

to produce an informant prior to trial).  The Circuit once affirmed a trial court's

denial of a defendant's request for a pretrial interview of an informant, for use as

impeachment, because the interview "was an effort to circumvent Rule 15 and get

informally what he could not have under the rule."  *United States v. Cutler*, 806

F.2d 933, 936 (9th Cir. 1986).  Additionally, some authority also exists for a federal trial court to stay discovery in a civil enforcement action parallel to a criminal enforcement action to prevent the defendant from circumventing the more restrictive criminal discovery rules.  *See S.E.C. v. Chestman*, 861 F.2d 49, 50 (2nd Cir. 1988); *Campbell v. Eastland*, 307 F.2d 478, 490 (5th Cir. 1962).

Here, the government's attempt to stay discovery in the parallel civil proceeding failed in state court, and it is not clear that this Court had any authority to stay that discovery had it been able to rule on the government's motion for a protective order.  The government provides no authority, and the Court has found none, for the proposition that the Court may preclude use of deposition testimony obtained in a parallel civil action after the government's efforts to prevent the deposition failed.  The Court will therefore deny the government's motion, without prejudice, and will allow the government to renew the motion if it finds additional authority compelling a different result.

**F.      King's motion to compel disclosures**

King filed a motion to compel Federal Rule of Evidence Rule 404(b) disclosures (Docket No. 91), challenging the timing and adequacies of disclosures. Although the government filed supplemental disclosures on the same day as King's motion, King renewed the motion at the hearing on April 16, 2009.  The Court will

**Memorandum Decision and Order – page 15**

defer ruling on whether the timing and adequacies of the disclosures renders use of specific Rule 404(b) evidence inadmissible, until proffered at trial.

## G.  King's oral motion to dismiss the indictment

Finally, at the hearing on April 16, 2009, King orally moved to dismiss two counts from the indictment for insufficient evidence.  King argues that the government admits it had no have evidence that two of the wells exceeded 18 feet in depth until recently, and therefore could not have presented such evidence to the grand jury.  *See Government's Response to King's Motion to Continue Trial or Exclude Experts*, Docket No. 104 at p. 3 (stating that "[s]ince well logs do not exist for two (2) of the wells in question, the Government realized the need for such testimony during trial preparation last week").

The Supreme Court has repeatedly held that an indictment valid on its face is not subject to challenge on the grounds of insufficient evidence.  *United States v. Williams,* 504 U.S. 36, 54 (1992); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988); *United States v. Calandra*, 414 U.S. 338, 344-345 (1974); *Costello v. United States*, 350 U.S. 359, 363 (1956); *but see United States. v. Romero*, 585 F.2d 391, 399 (9th Cir. 1978) (acknowledging that "a complete absence of evidence *might* serve to invalidate an indictment" (internal quotation omitted) (emphasis added)).  As the Court has previously ruled, a grand jury

**Memorandum Decision and Order – page 16**

indictment may be subject to dismissal only in cases of a prosecutor's "flagrant deception" or "overreaching" of the grand jury.  *See* Docket No. 101 at pp. 17-18.[4] With these standards in mind, the Court rejects King's motion for two reasons.

First, the government represented at the hearing that it secured Dr. Bartolino at this late date only because another potential expert, Dr. Greg Clark, became unavailable.  Otherwise, Dr. Clark would have testified to this matter at trial. *See King's Motion to Continue Trial or Exclude Experts*, Docket No. 103 at Exhibit A, p. 1 (disclosing Dr. Clark's proposed testimony on May 6, 2009).  The government also asserts that the volume of water pumped out of the wells alone could establish their depth is over 18 feet deep.  Thus, it is not readily apparent that the government committed "flagrant deception" or "overreaching" of the grand jury by proceeding with a complete absence of evidence on the depth of the two wells.

Second, King has provided no authority, and the Court is aware of none, supporting the proposition that the prosecution must disclose evidence submitted to the grand jury prior to trial in the absence of suspicious circumstances.  Allowing

---

[4]    The Court notes that even this limited exception may not have survived the latest Supreme Court opinion on the matter.  *See* 4 Wayne R. LaFave, Jerold H. Israel, Nancy J. King, and Orin S. Kerr, *Criminal Procudure* § 15.5(b) (3$^{\text{d}}$ ed. 2007) (discussing *United States v. Williams*, 504 U.S. 36 (1992), which held that the prosecution has no duty to disclose exculpatory evidence to the grand jury); *see also United States v. Williams*, 978 F.2d 1133, 1135 (9th Cir. 1992).

**Memorandum Decision and Order – page 17**

such discovery, and then dismissal for lack of evidence, would effectively write a summary judgment rule in the rules of criminal procedure.  The Court declines to do so, and will therefore deny the oral motion to dismiss.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the government's motion in limine (Docket No. 65) to exclude evidence of a lack of environmental harm, selective prosecution, and evidence designed to achieve jury nullification is hereby GRANTED.

IT IS FURTHER ORDERED that the government's motion to compel reciprocal discovery (Docket No. 89) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the government's motion for protective order or to preclude testimony purportedly obtained for a civil proceeding (Docket No. 102) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Cory Ledeal King's motion in limine (Docket No. 93) is GRANTED IN PART.  The Court grants the motion to exclude testimony on observations and discussions of the nature of the allegedly injected fluids.  The Court grants the motion to exclude John Klimes's testimony that gauges on irrigation lines at pond #2 and well #1 both read 65 p.s.i., and grants the

motion to forbid reference to, or description of, prior proceedings when presenting prior testimony.  The Court defers ruling on the admissibility of instances of King's silence.

IT IS FURTHER ORDERED that Cory Ledeal King's motion to strike surplusage (Docket No. 92) is DENIED.

IT IS FURTHER ORDERED that Cory Ledeal King's motion to compel Federal Rule of Evidence 404(b) disclosures (Docket No. 91) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Cory Ledeal King's motion to continue the trial date or exclude government expert witnesses (Docket No. 103) is DENIED.

IT IS FURTHER ORDERED that Cory Ledeal King's oral motion to dismiss two counts in the indictment for insufficient evidence, which he raised at the hearing on April 16, 2009, is DENIED.

DATED:  **April 17, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order – page 19**